UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

ALICE D. BEVERS,                       )

                                )

               Plaintiff,           )

                                )

v.                                  )         No. 3:18-CV-30-DCP

                                )

ANDREW M. SAUL,[1]           )

Acting Commissioner of Social Security,    )

                                )

               Defendant.       )

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 17]. Now before the Court are Plaintiff's Motion for Judgment on the Pleadings and Memorandum in Support [Docs. 20 & 21] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 22 & 23]. Plaintiff has also filed a Reply to Defendant's Motion for Summary Judgment [Doc. 24]. Alice D. Bevers ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of Defendant Nancy A. Berryhill ("the Commissioner"). For the reasons that follow, the Court will **GRANT** Plaintiff's motion and **DENY** the Commissioner's motion.

## I.    PROCEDURAL HISTORY

On February 2, 2015, Plaintiff filed an application for supplemental security income benefits pursuant to Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, claiming a

---

[1] Andrew M. Saul was sworn in as the Commissioner of Social Security on June 17, 2019, during the pendency of this case. Therefore, pursuant to Federal Rule of Civil Procedure 25(d), Andrew M. Saul is substituted as the Defendant in this case.

period of disability that began on February 2, 2015, the amended onset date. [Tr. 10, 42, 139 (amended onset date)]. After her application was denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ. [Tr. 88–91]. A hearing was held on July 14, 2017. [Tr. 29–41]. On August 17, 2017, the ALJ found that Plaintiff was not disabled. [Tr. 10–21]. The Appeals Council denied Plaintiff's request for review on November 30, 2017 [Tr. 1–6], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on January 25, 2018, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.    ALJ FINDINGS

The ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since February 12, 2015, the application date (20 CFR 416.971 *et seq*.).

2. The claimant has the following severe impairments: degenerative disc disease of the cervical and lumbar spine; osteoarthritis; colitis; anxiety and depression (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) and she is limited to working during two hour segments; can perform simple, routine tasks with regular breaks during an eight-hour workday; and occasional contact with supervisors and co-workers.

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

6. The claimant was born on December 3, 1968 and was 46 years old, which is defined as a younger individual age 18–49, on the date the application was filed (20 CFR 416.963).

7. The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969, and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since February 2, 2015, the date the application was filed (20 CFR 416.920(g)).

[Tr. 12–20].

## III.    STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different

conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## IV. DISABILITY ELIGIBILITY

"Disability" is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). A claimant will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

§§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.

> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3.   If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4.   If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5.   Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record."   20 C.F.R. §§ 404.1520(a)(4), -(e) and 416.920(a)(4), -(e).   An RFC is the most a claimant can do despite her limitations.  §§ 404.1545(a)(1) and 416.945(a)(1).

The claimant bears the burden of proof at the first four steps.  *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five.  *Id.*  At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform.  *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V.   ANALYSIS

Plaintiff asserts that the ALJ's RFC determination is not supported by substantial evidence because the ALJ did not assign proper weight to the opinion of Plaintiff's treating psychiatrist, Kris Houser, M.D.  [Doc. 21 at 14–17].  Plaintiff alleges that the ALJ failed to properly apply the treating physician rule, and inappropriately afforded great weight to the opinions of the consultative psychological examiner and the nonexamining state agency psychological

consultants. [*Id.* at 16–17]. Additionally, Plaintiff contends that the ALJ failed to properly evaluate her complaints of abdominal symptoms, including diarrhea, and their impact on her ability to perform substantial gainful activity. [*Id.* at 17–21]. The Court will address Plaintiff's specific allegations of error in turn.

## A.    Treatment of Dr. Houser's Opinion

Plaintiff claims that the ALJ failed to weigh Dr. Houser's opinion in accordance with the treating physician rule, as the ALJ failed to provide good reasons for assigning little weight to the opinion. [Doc. 21 at 14–15]. Plaintiff asserts that the ALJ's conclusory discussion of the opinion does not constitute the analysis required by the treating physician rule. [*Id.*].

The Commissioner maintains that the ALJ properly acknowledged that Dr. Houser's opinion was inconsistent with the medical record and Plaintiff's limited mental health treatment, as well as not supported by her treatment notes. [Doc. 23 at 11–12]. However, Plaintiff responds that the Commissioner cannot establish that the ALJ properly applied the treating physician rule in the disability decision. [Doc. 24 at 3].

Plaintiff began treatment with Dr. Houser on March 11, 2015 [Tr. 245], and continued treatment through the disability hearing, including on June 8, 2015 [Tr. 843], August 31, 2015 [Tr. 842], December 2, 2015 [Tr. 841], February 29, 2016 [Tr. 840], May 25, 2016 [Tr. 839], August 17, 2016 [Tr. 838], November 9, 2016 [Tr. 837], January 30, 2017 [Tr. 836], and April 26, 2017 [Tr. 835]. Dr. Houser then completed a Mental Residual Functional Capacity Assessment on November 3, 2016. [Tr. 540–46]. In this opinion, Dr. Houser states that Plaintiff has "had chronic anxiety and depression which causes her to be socially withdrawn and creates great challenges in dealing with the general public." [Tr. 542]. Additionally, Dr. Houser noted that on occasion, Plaintiff's anxiety "even manifests itself by causing GI distress." [*Id.*].

6

Therefore, Dr. Houser opined that Plaintiff was moderately limited in the ability to remember locations and work-like procedures, and the ability to understand and remember detailed instructions, but that she was not significantly limited in the ability to understand and remember very short and simple instructions. [Tr. 540]. Additionally, Dr. Houser found that Plaintiff was markedly limited in the ability to maintain attention and concentration for extended periods, as well as the ability to complete a normal workday and workweek without interruption from psychologically based symptoms; moderately limited in the ability to carry out detailed instructions, the ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, the ability to sustain an ordinary routine without special supervision, the ability to work in coordination with or proximity to others without being distracted, and the ability to make simple work-related decisions; and that Plaintiff was not significantly limited in the ability to carry out very short and simple instructions. [Tr. 540–41].

When assessing Plaintiff's social interaction, Dr. Houser opined that Plaintiff was markedly limited in the ability to interact appropriately with the general public; moderately limited in the ability to ask simple questions or request assistance, the ability to accept instructions and respond appropriately to criticism from supervisors, and the ability to get along with coworkers or peers; and that Plaintiff was not significantly limited in the ability to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. [Tr. 541]. Dr. Houser then assessed Plaintiff's adaption, and found that she was moderately limited in the ability to respond appropriately to changes in the work setting, the ability to be aware of normal hazards and take appropriate precautions, the ability to travel in unfamiliar places or use public transportation, and the ability to set realistic goals or make plans independently of others. [*Id.*].

7

Lastly, Dr. Houser opined that Plaintiff would face a slight degree of limitation in the restriction of activities of daily living; marked difficulties in maintaining social functioning; marked deficiencies of concentration, persistence, or pace; and repeated, or three episodes within one year, episodes of deterioration or decompensation in a work or work-like setting. [Tr. 543].

In the disability decision, the ALJ briefly stated that "Dr. Kris Hower [sic] . . . opined that due to anxiety and depression, [Plaintiff] would have some very restrictive limitations in activities of daily living, maintaining social functioning, [con]centration/persistence/pace, and she would have episodes of deterioration or decompensation in [a] work or work-like setting." [Tr. 18]. The ALJ assigned little weight to Dr. Houser's opinion, finding that it was not well-supported by treatment notes, as well as that it was inconsistent with the medical record and Plaintiff's "very limited mental health treatment." [*Id.*].

The ALJ, however, afforded significant weight to the opinion of Dr. Candice Blake and Mary Barker, M.S., a senior psychological examiner, who consultative examined Plaintiff on July 1, 2015.[2] [Tr. 17]. In the disability decision, the ALJ extensively reviewed Dr. Blake and Ms. Barker's opinion. For example, the ALJ noted that during the examination, Plaintiff's long-term memory was adequate, while her short-term memory was within normal limits. [Tr. 17]. Additionally, the ALJ reviewed that Plaintiff's thought processes were somewhat concrete, her insight and judgment were fair, and she showed the ability for basic abstract reasoning. [*Id.*]. The ALJ noted that Plaintiff's level of functioning was estimated to be in the borderline to low average

---

[2] The Court notes that because the psychological evaluation was signed by both Dr. Blake and Ms. Barker, it constitutes an opinion of a consultative physician. *See, e.g.*, *Fairchild v. Colvin*, 14 F. Supp. 3d 908, 917 n.5 (S.D. Ohio 2014) (finding that because a treating psychiatrist "signed off" on statements given by a licensed social worker, those statements were considered the opinion of the treating psychiatrist).

range of intellectual abilities, and he detailed Plaintiff's activities of daily living. [Tr. 17–18].

After performing a mental status examination and reviewing Plaintiff's personal and family history, vocational history, mental status, current symptomatology, activities of daily living, ability to relate, and mental capacity, Dr. Blake and Ms. Barker diagnosed Plaintiff with major depressive disorder, recurrent, moderate, as well as an unspecified anxiety disorder. [Tr. 494]. Accordingly, Dr. Blake and Ms. Barker opined that Plaintiff's ability to understand and remember was not significantly impaired by a mental disorder; her ability to sustain concentration and persistence was moderately impaired by depression; and her social interaction and adaption were moderately impaired by her depression and anxiety. [*Id.*]. The ALJ afforded significant weight to this opinion, finding that it was "supported by medical signs and findings," as well as that it was "consistent with [Plaintiff's] very limited mental health treatment." [Tr. 18].

Lastly, the ALJ also assigned significant weight to the opinions of the state agency psychological consultants because "they are consistent with the record as a whole." [Tr. 19]. Robert Paul, Ph.D., reviewed the evidence of record at the initial level of the agency's review on July 10, 2015, and opined that Plaintiff was not significantly limited in the ability to remember locations and work-like procedures, or the ability to understand and remember very short and simple instructions, but that she was moderately limited in the ability to understand and remember detailed instructions. [Tr. 52]. Additionally, Dr. Paul opined that Plaintiff was moderately limited in the ability to carry out detailed instructions, maintain attention and concentration for an extended period, and the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms. [Tr. 52–53]. Lastly, Dr. Paul found that Plaintiff was moderately limited in the ability to interact appropriately with the general public, the ability to get along with coworkers or peers, and the ability to respond appropriately to changes in the work

setting.  [Tr. 53].

Accordingly, Dr. Paul opined that Plaintiff could "understand and remember for at least simple and limited range of detailed (1-3 steps) tasks and instructions," as well that she could, "with some but not substantial difficulty, sustain adequate persistence and pace for [the] above tasks across [a] normal work day and work week given customary breaks." [Tr. 54].  Additionally, Dr. Paul found that Plaintiff could interact adequately with the general public, coworkers, and supervisors for the purposes of task competition; but that she was better suited for "things-vs people-oriented type work," and that her interactions with her supervisors and coworkers "should be brief, superficial, and task-focused," while she should have no more than occasional contact with the general public.  [*Id.*].

Aroon Suansilppongse, M.D., reviewed the evidence of record at the reconsideration level of the agency's review on December 30, 2015.  [Tr. 69].  Dr. Suansilppongse assessed essentially the same limitations as Dr. Paul, but expanded that Plaintiff could "carry out simple instructions," but "[h]er anxiety and depressive reaction[,] as well as alleged pain[,] would interfere with her ability for sustained concentration and persistence or for task completion," although she was still able to complete tasks at an acceptable pace.  [Tr. 68].  Additionally, Dr. Suansilppongse opined that Plaintiff's social avoidance and anxiety reaction would occasionally interfere with her ability to interact appropriately with her supervisors, coworkers, or the public, but that she would be able to complete tasks with infrequent contact with others.  [*Id.*].  Lastly, Dr. Suansilppongse found that Plaintiff's "transient cognitive dysfunction and depressive reaction would occasionally interfere with her adaptability in a routine work setting."  [Tr. 69].

In considering a claim of disability, the ALJ generally must give the opinion of the claimant's treating physician "controlling weight." 20 C.F.R. §§ 404.1527(c); 416.927(c)(2).[3] However, the ALJ must do so only if that opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Id.* If the opinion is not given controlling weight, as here, the ALJ must consider the following factors to determine what weight to give it: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source," as well as "other factors." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527).

The ALJ is not required to explain how she considered each of these factors but must nonetheless give "good reasons" for giving a treating physician's opinion less than controlling weight. *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011); *see also Morr v. Comm'r of Soc. Sec.*, 616 F. App'x 210, 211 (6th Cir. 2015) (holding "good reasons" must be provided "that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight") (citing *Wilson*, 378 F.3d at 544; 20 C.F.R. §§ 404.1527(c)(2) & 416.927(c)(2)).

---

[3] The treating physician rule has been abrogated as to claims filed on or after March 27, 2017. *See* 20 C.F.R. §§ 404.1520c; 416.920c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from your medical sources."); s*ee also Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5852–57 (Jan. 18, 2017). The new regulations eliminate the term "treating source," as well as what is customarily known as the treating physician rule. As Plaintiff's application was filed before March 27, 2017, the treating physician rule applies. *See id.* §§ 404.1527; 416.927.

Ultimately, the Court finds that the ALJ failed to provide "good reasons" that were "sufficiently specific" for discounting Dr. Houser's opinion. *See Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting Soc. Sec. Rul. No. 96–2p, 1996 WL 374188, at *5 (July 2, 1996)). First, the ALJ did not acknowledge Dr. Houser's treating relationship with Plaintiff, a regulatory factor that the ALJ is required to consider under 20 C.F.R. § 416.927(c)(2). *See, e.g.*, *Loukinas v. Comm'r of Soc. Sec.*, No. 1:14-CV-930, 2016 WL 1126550, at *13 (S.D. Ohio Mar. 21, 2016) (finding the ALJ "failed to give appropriate consideration to the regulatory factors in assigning weight" to the treating psychiatrist's opinion, as the ALJ "failed to acknowledge that Dr. Natarajan had an over two-year treating relationship with plaintiff with frequent examinations at the time he rendered his opinion," as well as being "a specialist in psychiatry"). As the Court has already detailed, Dr. Houser regularly saw Plaintiff nine times over a two-year period for treatment of her mental impairments.

Additionally, the ALJ failed to identify how Dr. Houser's opinion was not supported by Plaintiff's treatment notes or any inconsistencies between the opinion and the medical record. In *Gayheart*, the Sixth Circuit detailed that the provided reasons for discounting a treating-source opinion "must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Gayheart*, 710 F.3d at 376 (quoting Soc. Sec. Rul. No. 96–2p, 1996 WL 374188, at *5 (July 2, 1996)). This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)).

Here, "the ALJ does not identify the substantial evidence that is purportedly inconsistent" with Dr. Houser's opinion. *Id.* at 377. The ALJ failed to review Dr. Houser's two-year treatment

12

history of Plaintiff in the disability decision; rather, the ALJ only stated that Plaintiff had a "very limited mental health treatment." [Tr. 18]. Specifically, the ALJ failed to discuss Dr. Houser's treatment notes, let alone identify any inconsistencies with his opinion. *See Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 552 (6th Cir. 2010) ("Put simply, it is not enough to dismiss a treating physician's opinion as 'incompatible' with other evidence of record; there must be some effort to identify the specific discrepancies and to explain why it is the treating physician's conclusion that gets the short end of the stick.").

The ALJ also failed to detail any specific inconsistencies between Dr. Houser's opinion and the overall "medical evidence of record." [Tr. 18]. While the ALJ extensively reviewed the consultative opinion of Dr. Blake and Ms. Barker, he did not explain how their opinion was more consistent with the objective medical record or in conflict with the opinion of Plaintiff's treating psychiatrist, Dr. Houser. *See, e.g.*, *Cross v. Comm'r of Soc. Sec.*, No. 5:17-cv-1888, 2018 WL 3216056, at *16 (N.D. Ohio June 13, 2018) ("Making generic references to the records of specialists who expressed mixed opinions neither identifies an 'inconsistency with the record as a whole' nor an inconsistency with that opposing physician's views in particular."), *report and recommendation adopted by*, 2018 WL 3208173 (N.D. Ohio June 29, 2018).

Therefore, the ALJ's position that Dr. Houser's opinion was not supported by the medical evidence of record does not constitute a good reason for assigning little weight to the opinion. *See Wilson v. Berryhill*, No. 3:16-CV-95-HBG, 2017 WL 2790186, at *5 (E.D. Tenn. June 27, 2017) ("The ALJ does not identify with specificity any treatment records, examining findings, diagnostic studies, or other evidence that specifically undermines Dr. Laman's opinions. While the ALJ discussed the medical evidence of record in general, the Court is unable to determine how the ALJ arrived at his conclusion . . . ."); *Sacks v. Colvin*, No. 2:15-cv-2315, 2016 WL 1085381, at * 5

(S.D. Ohio March 21, 2016) ("[A]lthough the ALJ made a general statement about inconsistencies between Dr. Bhatia's opinions and the 'medical evidence of record,' it was just that - a general statement devoid of any specific reference to any portion of the medical evidence. Such conclusory statements do not provide the claimant with any ability to understand their content, nor do they provide a reviewing court with the ability to decide if the ALJ correctly or incorrectly assessed those claimed inconsistencies."), *report and recommendation adopted sub nom.*, *Sacks v. Comm'r of Soc. Sec.*, 2016 WL 2858901 (S.D. Ohio May 16, 2016).

Lastly, the Court notes that the ALJ assigned significant weight to the opinions of the nonexamining state agency psychological consultants. However, the ALJ did not review their opinions in the disability decision, but instead solely stated that these opinions "are consistent with the record as a whole." [Tr. 19]. Plaintiff correctly states that the nonexamining state agency consultants did not review the entire record, including much of her mental health treatment with Dr. Houser.

"[B]efore an ALJ accords significant weight to the opinion of a non-examining source who has not reviewed the entire record, the ALJ must give 'some indication' that he 'at least considered' that the source did not review the entire record. In other words, the record must give some indication that the ALJ subjected such an opinion to scrutiny." *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 632 (6th Cir. 2016) (quoting *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009)). The Sixth Circuit has found that an ALJ had satisfied *Blakley* by reviewing the medical evidence that was entered after the nonexamining state agency consultant's opinion, and explaining why the consultant's opinion was afforded greater weight despite the subsequent evidence. *Spicer v. Comm'r of Soc. Sec.*, 651 F. App'x 491, 493–94 (6th Cir. 2016) (citing *Blakley*, 581 F.3d at 409). Here, the ALJ did not subject the opinions of the nonexamining state agency

14

consultants to any scrutiny, as the ALJ did not review Plaintiff's mental health treatment with Dr. Houser. Additionally, the ALJ did not analyze the opinions of the nonexamining state agency psychological consultants or explain how they were inconsistent with Dr. Houser's opinion. *See Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 377 (6th Cir. 2013) ("Surely the conflicting substantial evidence must consist of more than the medical opinions of the nontreating and nonexamining doctors. Otherwise the treating-physician rule would have no practical force because the treating source's opinion would have controlling weight only when the other sources agreed with that opinion.").

Accordingly, the ALJ improperly failed to discuss how Dr. Houser's opinion was conflicted by the other medical opinions or specific medical evidence in the record as a whole. *See id.* at 376–77 (holding the ALJ did not provide "good reasons" for not providing controlling weight to the treating physician's opinions, as "the conclusion that Dr. Onady's opinions 'are not well-supported by any objective findings' is ambiguous" and "the ALJ does not identify the substantial evidence that is purportedly inconsistent with Dr. Onady's opinions"). Therefore, the Court finds that the ALJ failed to set forth "good reasons" for rejecting the limitations assessed by Plaintiff's treating physician. *Id.* The ALJ failed to discuss Plaintiff's mental health treatment with Dr. Houser, acknowledge her status as Plaintiff's treating physician, or sufficiently detail how the opinion was inconsistent with the medical record or the other medical opinions to which the ALJ afforded significant weight. *See, e.g.*, *Brooks v. Soc. Sec. Admin.*, 430 F. App'x 468, 481 (6th Cir. 2001) (holding the ALJ failed to "present *good reasons*," *id.* at 483, where "[o]f the four 'good reasons' that the ALJ can be understood to have offered for his decision . . . two are not supported by the record" and "[a]nother, although technically supported by the record is not a legitimate rationale").

The ALJ's failure to adequately explain the reasons for the weight given to a treating physician's opinion "*denotes a lack of substantial evidence*, even where the conclusion of the ALJ may be justified based upon the record." *Blakley v. Comm'r of Social Sec.,* 581 F.3d 399, 407 (6th Cir. 2009) (emphasis in the original) (quoting *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 243 (6th Cir. 2007)).

The Court further concludes that the ALJ's failure to provide good reasons for rejecting Dr. Houser's opinion does not constitute harmless error. Harmless error occurs: (1) if a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of the procedural safeguard of the good reasons rule even though an ALJ has not complied with the express terms of the regulation. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004). However, the Court finds that the ALJ's failure to explain adequately why he discounted the opinion of Plaintiff's treating psychiatrist "hinders a meaningful review of whether the ALJ properly applied the treating-physician rule that is at the heart of this regulation." *Gayheart*, 710 F.3d at 377. Plaintiff's allegation of error therefore constitutes a basis for remand.

### B.     Plaintiff's Abdominal Symptoms

Plaintiff claims that the ALJ failed to "properly analyze [her] abdominal issues[,] including her diarrhea[,] and how it impacts her ability to perform substantial gainful activity." [Doc. 21 at 17]. Plaintiff asserts that the ALJ failed to consider all relevant evidence and analyze the effect of her symptoms under Social Security Ruling 96-7p, as the ALJ ignored the medical evidence regarding Plaintiff's diarrhea and her need to take additional work breaks during the day.

The Commissioner maintains that the ALJ properly evaluated Plaintiff's complaints of abdominal symptoms, and after carefully considering the entire record, "found Plaintiff's debilitating complaints inconsistent with the record as a whole." [Doc. 23 at 15]. Additionally, the Commissioner contends that the ALJ considered Plaintiff's course of treatment for her abdominal symptoms. Lastly, the Commissioner claims that while the ALJ was not required to explicitly discuss all of the medical records regarding Plaintiff's abdominal symptoms, he did review most of the records that Plaintiff claims were ignored.

With regard to cases in which a plaintiff claims that symptoms of the underlying conditions are the claimed cause of disability, the Sixth Circuit has offered additional guidance relative to assessing credibility and subjective complaints:

> Where the symptoms and not the underlying condition form the basis of the disability claim, a two-part analysis is used in evaluating complaints of disabling pain. 20 C.F.R. § 416.929(a); *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001); *Felisky v. Bowen*, 35 F.3d 1027, 1038–39 (6th Cir. 1994). First, the ALJ will ask whether the there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. 20 C.F.R. § 416.929(a). Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities. *Id.*
>
> Relevant factors for the ALJ to consider in his evaluation of symptoms include the claimant's daily activities; the location, duration, frequency, and intensity of symptoms; factors that precipitate and aggravate symptoms; the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; other treatment undertaken to relieve symptoms; other measures taken to relieve symptoms, such as lying on one's back; and any other factors bearing on the limitations of the claimant to perform basic functions. *Id.; see also* Soc. Sec. Rul. 96–7p, 1996 WL 374186, at *2–3 (July 2, 1996).

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007).

Social Security Ruling 96-7p articulates the standard for evaluating a claimant's subjective allegations, including those regarding pain, as follows:

> [O]nce an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities.

1996 WL 374186, at *2 (July 2, 1996). When objective medical evidence fails to substantiate a claimant's subjective allegations regarding the intensity, persistence, or functional effects of pain, the ALJ must make a credibility finding based on the entire case record. *Id.*

In the disability decision, the ALJ first found that Plaintiff's colitis was a severe impairment. [Tr. 12]. When determining Plaintiff's RFC, the Plaintiff assessed that Plaintiff was limited to performing simple, routine tasks with regular breaks during an eight-hour workday. [Tr. 14]. Additionally, the ALJ referenced Plaintiff's testimony that "she needs ready access to a restroom three to five times a day." [Tr. 15]. However, the ALJ found that although Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible to the extent they were inconsistent with noted objective findings. [*Id.*].

When reviewing the medical record, the ALJ noted that Plaintiff sought treatment for diarrhea, vomiting, nausea, and abdominal pain, and on April 29, 2015, Plaintiff presented to University of Tennessee Medical Center with complaints of a change in bowel habits over the past three months. [Tr. 16]; *see* [Tr. 566]. The ALJ reviewed that medical providers assessed a change in Plaintiff's bowel habits, which could "possibly be due to some form of colitis versus irritable bowel syndrome." [Tr. 16]. Additionally, the ALJ noted that Plaintiff was seen on September 29, 2016 for treatment of her diarrhea, and Plaintiff stated that here bowel movements occurred about

18

three times a day.  [Tr. 17]; *see* [Tr. 649].  Further, the ALJ reviewed that "[a]fter examination, medical providers assessed acid reflux disease" and chronic diarrhea, advised Plaintiff to continue Nexium, and noted that Plaintiff has failed multiple therapies that she could not afford.  [*Id.*].

Plaintiff points to numerous treatment notes in the medical record referencing her abdominal symptoms, including nausea, weight loss, and diarrhea, which she claims the ALJ ignored in the disability decision.  For example, Plaintiff asserts that the ALJ did not reference a February 18, 2016 treatment note that she had "unrelenting diarrhea," [Tr. 612], as well as her testimony about the need to go to the bathroom urgently [Tr. 34].  Additionally, Plaintiff cites several gastroenterology records that detail persistent diarrhea [Tr. 667], bowel movements occurring four to five times a day [Tr. 661], and extensive treatment records for this symptom. Lastly, Plaintiff claims that during the disability hearing, her attorney asked the VE a hypothetical where the individual would be required to take three additional breaks of twenty minutes each, in addition to the normally scheduled breaks.  [Tr. 40].  The VE testified that such an individual would not be able to maintain employment.  [*Id.*].

First, the Court notes that an ALJ is "not required to discuss all the evidence, as long as her factual findings as a whole show that she implicitly considered the record as a whole."  *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 730 (6th Cir. 2013) (citing *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507–08 (6th Cir. 2006)).  Further, it is "well established that an ALJ may pose hypothetical questions to a vocational expert [but] is required to incorporate only those limitations accepted as credible by the finder of fact."  *Winslow v. Comm'r of Soc. Sec.,* 566 F. App'x 418, 421–22 (6th Cir. 2014).

Ultimately, as the Court has already found that Plaintiff's case should be remanded, and the medical record establishes extensive treatment for Plaintiff's abdominal symptoms, on remand,

the ALJ should consider whether Plaintiff's diarrhea would require additional, unscheduled breaks. The ALJ is tasked with evaluating the intensity, persistence, and limiting effects of a claimant's symptoms on their ability to perform basic work activities. *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citing 20 C.F.R. 416.929(a)). While the ALJ noted that Plaintiff stated her bowel movements occurred about three times a day, the ALJ failed to review the effect of Plaintiff's abdominal symptoms on the potential need to take multiple, unscheduled bathroom breaks throughout the day. *See Moore v. Comm'r of Soc. Sec.*, No. 2:18-CV-634, 2019 WL 1323861, at *8 (S.D. Ohio Mar. 25, 2019) ("Given the numerous medical records substantiating Plaintiff's allegations of diarrhea, the ALJ should have at least considered whether Plaintiff would require additional and/or unscheduled bathroom breaks beyond those normally permitted by an employer."), *report and recommendation adopted by*, 2019 WL 2192143 (S.D. Ohio May 21, 2019); *cf. Allison v. Berryhill*, No. 5:16-CV-2388, 2017 WL 3701688, at *10 (N.D. Ohio June 23, 2017) ("Because the ALJ expressly considered Plaintiff's claimed symptom that his diarrhea required bathroom use on an hourly basis [ ], explained why he was discounting that allegation, and rooted that explanation in a consideration of several of the factors he is required to consider under SSR 96-7p, Plaintiff's second assignment of error is without merit."), *report and recommendation adopted sub nom.*, *Allison v. Comm'r of Soc. Sec. Admin.*, 2017 WL 3687394 (N.D. Ohio Aug. 25, 2017). Therefore, while the Court finds that the ALJ did not cherry pick select portions of the record regarding Plaintiff's diarrhea, on remand, the ALJ should explicitly consider Plaintiff's need for unscheduled breaks due to her abdominal symptoms.

## V.    CONCLUSION

Based on the foregoing, Plaintiff's Motion for Judgment on the Pleadings [**Doc. 20**] will be **GRANTED**, and the Commissioner's Motion for Summary Judgment [**Doc. 22**] will be

**DENIED**.  This case will be **REMANDED** to the SSA for the ALJ to reconsider the opinion of Plaintiff's treating psychiatrist, as well as the medical record with respect to Plaintiff's abdominal symptoms.

ORDER ACCORDINGLY.

Debra C. Poplin
United States Magistrate Judge